IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ESTATE OF GEORGE J. KERRIGAN,       )
and THE GEORGE KERRIGAN             )
REVOCABLE TRUST,                    )
                                    )
    Plaintiffs,          )
                                    )
v.                                  )   CIV. ACT. NO. 1:18-CV-786-ECM
                                    )          [WO]
JAMES M. KERRIGAN,                  )
                                    )
    Defendant.           )

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Pending before the Court is Defendant James M. Kerrigan's Motion to Dismiss and Alternatively, Motion to Change Venue. (Doc. 19). This dispute centers upon the administration of the Kerrigan Real Estate Investment Trust ("KREIT") that Decedent George J. Kerrigan established for his benefit several years ago. George J. Kerrigan passed away on August 19, 2017. George Kerrigan's widow, on behalf of his estate, claims that the trustee, Defendant James Kerrigan, failed to distribute proceeds from the trust to Decedent during his lifetime, failed to meet his legal obligation to provide an accounting of the trust assets, and wrongfully converted trust property. Shortly before his death, Decedent established another trust, the George Kerrigan Revocable Trust, as the beneficiary of the KREIT upon his death. The Revocable Trust also brings claims against the Defendant for continuing to improperly administer the trust after Decedent's death.

The Defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim. In the alternative, the Defendant seeks to transfer venue under 28 USC § 1404. For the reasons stated below, the Defendant's motions are due to be denied.

## II.     BACKGROUND[1]

On or about November 20, 1984, Decedent and his brother, the Defendant James Kerrigan, acquired Gateside, a property in Daleville, Alabama. Gateside provides temporary rentals, long-term mobile home rentals, and RV spaces with hookups. Until April 7, 2006, Decedent and the Defendant jointly owned and managed Gateside. On April 7, 2006, Decedent purchased the Defendant's 50% interest and became the sole owner of Gateside.

On or about December of 2010, Decedent conveyed his interest in Gateside to the Kerrigan Real Estate Investment Trust (KREIT) to be held as an asset of the KREIT. In late November 2013, Decedent and the Defendant entered into an agreement to memorialize the KREIT. The Trust Agreement names the Defendant as the trustee of the KREIT and Decedent as the sole beneficiary. Decedent and the Defendant signed the Trust Agreement and it was executed in Daleville, Alabama. The agreement mandates that it "be administered under the laws of the State of Alabama and construction of this agreement shall be controlled by the laws of [Alabama]." (Doc. 19-2 at 3). The Trust Agreement was recorded in Dale County, Alabama.

---

[1] This recitation of the facts is based largely upon the Plaintiffs' complaint, which is presumed to be true for the purposes of this motion.

The terms of the Trust Agreement are sparse—the substantive portion of the document is barely two pages long. The Trust Agreement provides that the trust should be distributed "to meet the ongoing needs of the trust beneficiary to include the normal costs associated with day to day living activities," but does not provide the trustee with specific direction about how to decide the needs of the beneficiary. (Doc. 19-2 at 2). It only directs that the decision should be made "at the sole discretion of the trustee." (*Id*.). It does not specify what should occur when the beneficiary, Decedent George Kerrigan, dies.

On or about March 16, 2017, Decedent executed a separate trust agreement establishing the George Kerrigan Revocable Trust, which identifies Decedent as the sole beneficiary of the Revocable Trust during his lifetime. His wife was named as the sole trustee and sole beneficiary following Decedent's death. Decedent assigned his interest as the beneficiary of the KREIT to the Revocable Trust.

On April 22, 2017, the Defendant signed and had a document notarized titled "Exercise of Appointment by Execution of Certificate of Beneficiary." That document purports to appoint the great-grandchildren of Decedent as the contingent beneficiaries of the KREIT upon the death of the beneficiary, Decedent. The only signatures on that document are that of the Notary Public and the Defendant as the Trustee of the Kerrigan Real Estate Investment Trust. Decedent, the beneficiary and settlor of the KREIT, did not sign this document and there is nothing to indicate that this assignment was prepared with his approval.

On June 5, 2017, Defendant entered into an agreement to sell the Gateside Property for $386,326.79. (Doc. 19-7). The mortgage was seller financed at a rate of four percent

interest to be paid to the KREIT in 115 installments of $4,049.81. The Plaintiffs allege that this purported sale was for less than full and adequate consideration and that the seller financed debt is potentially not properly collateralized. (Doc. 16 at 7, para. 33–34).

Decedent died in New Hampshire in August of 2017. The Plaintiffs allege that neither Decedent, the Revocable Trust, Decedent's estate, nor Mrs. Kerrigan ever received any income or any benefit from Gateside's operation or its purported sale. The Plaintiffs further allege that the Defendant never reported to Decedent or his estate the financial condition of the trust, in violation of Alabama law.

The Plaintiffs allege that the Defendant violated various statutes and breached his fiduciary obligations to Decedent and now, to the Revocable Trust. Accordingly, the Plaintiffs bring claims for Breach of Fiduciary Duty (Count One); Accounting (Count Two); Conversion (Count Three); Negligence (Count Four); and Equitable Relief in the Form of a Constructive Trust (Count Five); and Breach of Trust under Alabama Code § 19-3b-1001 (Count Six).

The Defendant brings this Motion to Dismiss for lack of subject matter jurisdiction, lack of standing, lack of personal jurisdiction, and for failure to state a claim. In the alternative, the Defendant moves to transfer venue to the Defendant's home state of Massachusetts or New Hampshire, the state where Decedent resided when he died and where Mrs. Kerrigan currently resides.

# III. ANALYSIS

## A. The Court has subject matter jurisdiction over this matter, and the Plaintiffs have adequately pleaded their claims.

### a. Legal Standard for Motions to Dismiss for Lack of Subject Matter Jurisdiction

Generally, a court's first duty is to determine whether it has subject matter jurisdiction because that implicates the court's power to hear the case. *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1322 (11th Cir. 2017) (observing that while not an unyielding rule, subject matter should generally be resolved first); *United States v. Salmona*, 810 F.3d 806, 810 (11th Cir. 2016) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  The burden of establishing a federal court's subject-matter jurisdiction rests on the party asserting jurisdiction. *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 n.9 (11th Cir. 1982; *Bond Safeguard Ins. Co. v. Wells Fargo Bank, N.A.*, 502 F. App'x. 867, 869 (11th Cir. 2012).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, parties may assert lack subject-matter either through a factual attack or a facial attack on the pleadings. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (per curiam).  A facial attack questions the sufficiency of the pleading, and the plaintiff enjoys similar safeguards provided when opposing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Sea Vessel Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994).  The court accepts the plaintiff's allegations as true, construes them most favorably to the plaintiff, and will not look beyond the face of the complaint to determine jurisdiction. *Id*.  A factual attack,

however, permits "the trial court [to] proceed as it never could under 12(b)(6)." *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. May 20, 1981)). The court is permitted to undertake a wide-ranging investigation and, in order to ascertain whether subject matter jurisdiction exists, may look beyond the pleadings and review or accept any evidence submitted by the parties. *Id*.

There is, however, an important distinction between the court's power to determine whether it has subject matter jurisdiction and the ability to reach the substantive claims that form the basis of the case. The wide-ranging power afforded to the court is limited to consideration of subject matter jurisdiction, and when the inquiry encroaches upon the merits of the case, the plaintiff is entitled to protection from the court's power to weigh the facts under a Rule 12(b)(1) motion. *Eaton*, 692 F.2d at 733 ("The argument against premature dismissal on 12(b)(1) grounds is particularly strong when the basis of jurisdiction is also an element of plaintiff's cause of action on the merits").

Thus, where subject-matter jurisdiction is "inextricably intertwined" with the merits of the case, *Lawrence*, 919 F.2d at 1529 (quoting *Eaton*, 692 F.2d at 733), "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action." *Williamson*, 645 F.2d at 415. In such cases, the court's power is more limited than under a straightforward Rule 12(b)(1) motion. This is to prevent a defendant from challenging the underlying cause of action by means of an attack on subject-matter jurisdiction which enables the judge, rather the jury, to weigh the merits of the case. *Whitson v. Staff Acquisition, Inc.*, 41 F. Supp. 2d 1294 (M.D. Ala. 1999) (quoting *Eaton*, 692 F.2d at 733). Instead, the court should convert the Rule 12(b)(1) motion to a Rule

12(b)(6) motion to provide the plaintiff with the appropriate protections. *Id.* (citing *Eaton*, 692 F.2d at 733).

### b. Legal Standard for Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### c. The Plaintiffs have established a sufficient amount in controversy.

#### i. The Doctrine of Judicial Estoppel does not prevent the Plaintiffs from asserting that the amount in controversy is over $75,000.

The Defendant claims the amount-in-controversy has not been established. Specifically, the Defendant claims that judicial estoppel prohibits the Plaintiffs from asserting that over $75,000 is in controversy because in opening the estate, the administratrix of the estate, Alice M. Kerrigan, claimed the estate did not own any real property and was not worth more than $4,300. Mrs. Kerrigan's representations however, are not plainly contradictory to the claims she made in the instant case and the Revocable Trust can independently establish the requisite amount in controversy.

"Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." *Transamerica Leasing*, 430 F.3d 1326, 1335 (11th Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). A district court may invoke the doctrine "to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* In determining whether to the apply the doctrine, courts generally consider: (1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*

To open the estate, Mrs. Kerrigan represented that the estate did not own any real property and the assertions in this lawsuit do not contradict that statement. The Estate claims it is owed money from the KREIT—the Estate does not claim that it owns real

property. Mrs. Kerrigan's assertion regarding the value of the estate is also not necessarily inconsistent with the assertion that this dispute is valued at over $75,000. When Mrs. Kerrigan opened the Estate, it did not yet possess the money that it alleges the Defendant had wrongfully withheld from Decedent. The Defendant has also failed to establish that to permit this lawsuit to proceed would create the perception that one of the courts has been misled. Instead, the Estate effectively argues that it cannot be sure how much it is owed and that when the estate was opened, this lawsuit had not yet been filed. Moreover, the Defendant has not adequately explained why or how he was unfairly harmed by the assertion that the estate was valued at less than $4,300. Vague allegations that he may have had more rights to make some sort of challenge in the probate proceedings are insufficient. Finally, the doctrine of judicial estoppel is invoked at the court's discretion and this Court declines to exercise such discretion here, where the statements are not plainly contradictory.

### ii. The KREIT property was recently sold for nearly $400,000.

Moreover, the Plaintiffs assert that the proper beneficiary of the KREIT is now the Revocable Trust. The Estate seeks only the money that should have been distributed during the lifetime of the Decedent, but the Revocable Trust seeks to establish its right to receive the proceeds from Gateside or the sale of Gateside, which sold for nearly $400,000.

Accordingly, the Court need not speculate as to whether the amount in controversy exceeds $75,000. The Defendant submitted documents that confirm Gateside was recently sold for $386,236.79 (Doc. 19-7), and the Revocable Trust asserts that the Defendant has

acted to permanently deprive it of that benefit. The Court is satisfied that the amount in controversy is established.

### d. The Plaintiffs have standing to bring the suit and the Complaint otherwise pleads sufficient facts to survive a motion to dismiss for failure to state a claim.

The Defendant argues that the Plaintiffs lack standing because the "Decedent had no right to the trust income at his death by virtue of his waiver of all interest in the income or corpus and the trustee's exercise of the power to transfer the trust corpus and income." (Doc. 19 at 36). The Defendant further asserts that he appropriately named Decedent's great-grandchildren as the contingent beneficiaries of the KREIT upon Decedent's death, resulting in the Revocable Trust also lacking standing to sue. The Defendant does not specify whether these arguments are based on subject matter jurisdiction or failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. He does, however, state that the burden is on the Plaintiffs to demonstrate the court's jurisdiction. Thus, the Defendant attempts to impose the heightened 12(b)(1) burden for lack of subject matter jurisdiction on the Plaintiff. This is such an argument where subject-matter jurisdiction is "inextricably intertwined" with the merits of the case because the court would first be required to interpret the provisions of the trust agreement that are disputed in this case. Accordingly, the Court will utilize the 12(b)(6) failure to state a claim standard. *See* Fed. R. Civ. Pro. 12(b)(6).

The Plaintiffs argue that the Defendant confuses Decedent's role as the settlor of the KREIT with Decedent's rights as a beneficiary of the KREIT when he claims that Decedent

had no right to the trust income. The Plaintiffs further allege that the trust agreement did not give the Defendant the right to name a new trust beneficiary.

Indeed, as the settlor, Decedent waived his right in the property. However, as the trust beneficiary he was entitled to the trust income. *See* Ala. Code § 19-3B-103 (defining the settlor as a person who contributes property to a trust and defining the beneficiary as a person with an interest in a trust). The Defendant also argues that trust documents give him unfettered discretion to distribute trust property, or not, to the beneficiary. The Plaintiffs argue that the Defendant's interpretation of the KREIT formation documents is wrong. The law appears to support the Plaintiffs' position because the right to refuse to ever distribute trust income to a beneficiary appears to run contrary to a trustee's unalterable duty to act in the interest of the beneficiary. *See* Ala. Code § 19-3B-105 (stating that the terms of a trust agreement do not prevail over the trustee's duty to act in good faith in the interest of the beneficiaries). Thus, the language of the trust agreement is not clear, and it is not appropriate for the Court to attempt to interpret the disputed language of the trust documents at this stage.

As to the issue of naming a new beneficiary, the trust agreement only provides that a certificate of beneficiary is not required, but "nothing restricts the trustee from executing a certificate of beneficiary." (Doc. 19-2 at 2). The Defendant points to this language as giving him the authority to unilaterally name a different trust beneficiary. The Plaintiffs argue that the provision does not give the Defendant the right to name a new beneficiary, but instead, "a certificate of trust would have only been authorized in *Decedent's* name because he was the KREIT's sole beneficiary." (Doc. 21 at 12). Again, the Court will not

attempt to interpret this unclear and disputed language at the motion to dismiss stage and the Defendant's motion is denied to the extent that he argues the Plaintiffs do not have standing because the trust grants him unfettered discretion to dispense with trust property and appoint new beneficiaries.

### B. The Court has personal jurisdiction over the Defendant.

The Defendant asserts that the Court lacks personal jurisdiction over him because he is neither at home in the jurisdiction such that he would be subject to the general jurisdiction of the courts of the Middle District of Alabama and because he did not personally avail himself of the benefits of doing business in Alabama such that he would be subject to specific jurisdiction due to the basis of this lawsuit. For the reasons explained below, the Defendant's actions subject him to the jurisdiction of this Court for his actions that form the basis of this lawsuit.

### a. Legal Standard for Personal Jurisdiction

When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990). A federal court sitting in diversity jurisdiction generally must undertake a two-step inquiry to decide whether it has personal jurisdiction over the defendant. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citing *Carmouche v. Tamborlee Mgmt., Inc*, 789 F.3d 1201, 1203 (11th Cir. 2015)). First, the exercise of jurisdiction must be proper under the state's long-arm statute, which sets the limits of exercise of jurisdiction under state law. *Id.* Second, the court must determine whether the defendant has sufficient minimum contacts to satisfy the Due Process Clause

of the Fourteenth Amendment. The Alabama state long-arm statute extends to the reach permissible under the Due Process Clause of the Fourteenth Amendment, so the court need only undertake one analysis. *Oliver v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992) (citing *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983)).

The due process inquiry has two requirements. The defendant must have sufficient contacts with the forum state. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). In addition, the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." *Id.*

Courts can establish the first prong of the due process inquiry by establishing one of the two types of personal jurisdiction: "general" and "specific." *Turner v. Regions Bank*, 770 F. Supp. 2d 1244, 1248 (M.D. Ala. 2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)). A court has general personal jurisdiction over a party when "the cause of action does not arise out of . . . the [party's] activities in the forum State," but there are "continuous and systematic" contact between the two. *Id.* (citing *Helicopteros*, 466 U.S. at, 414–15). Specific jurisdiction is based on a party's contacts with the forum state that form the basis of the cause of action. *Id.* As explained below, the Defendant has sufficient contacts with this forum to establish specific personal jurisdiction.

### b. The Defendant has sufficient contact with this forum to establish personal jurisdiction.

For specific personal jurisdiction, the party must have specific minimum contacts, which involve three criteria: (1) the contacts must be related to the plaintiff's cause of

action or have given rise to it; (2) the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws; (3) the party's contacts within the forum state must be such that he should reasonably anticipate being haled into court there. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996). The minimum-contacts analysis is related to the requirement of the Due Process Clause that defendants must have "'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Madara*, 916 F.2d at 1516 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). This is because a defendant who has "purposefully directed his activities at residents of the forum," such that "the litigation results from alleged injuries that arise out of or relate to those activities," can expect to be liable to suit in that forum. *Burger King*, 471 U.S. at 472 (internal quotations and citations omitted).

A defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Id.*; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The law ensures that a defendant "will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts or because of the unilateral activity of a third person." *Madara*, 916 F.2d at 1516 (citations omitted). "Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a substantial connection with the forum state." *Id.* (emphasis in original) (internal quotations and citations omitted). "Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is *not* the

ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum." *Id.* (emphasis in original) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). As explained below, the Defendant took multiple steps to subject himself to the jurisdiction of this court.

### i. The Defendant purposefully availed himself of the benefit of conducting activities in Alabama and should have reasonably anticipated being haled into court here.

Here, the Plaintiffs' cause of action centers upon the Defendant's purported misappropriation of rental income and the sales proceeds from the Gateside property. The KREIT is an Alabama real estate trust and Gateside is Alabama property located in the Middle District of Alabama. While the Defendant argues that he administers the trust in his home state of Massachusetts and did not purposefully avail himself of the protection of Alabama law, those arguments are not persuasive.

Indeed, the Eastern District of Louisiana recently addressed a similar issue related to an out-of-state trustee and found the court had personal jurisdiction over the defendant. *See Benson v. Rosenthal*, 116 F. Supp. 3d 702 (E.D. La. 2015). There, the defendant argued that "he is a Texas resident who serves as a trustee of Texas trusts, which benefit Texas residents. Defendant does not live, work, or own property in Louisiana." *Id.* at 707. Moreover, the plaintiff was a Texas resident at the time the trusts were created, the trusts were created in Texas, the trusts provide they are subject to Texas law, and the defendant was appointed as trustee in Texas. However, the court observed that "many of the trust assets at issue are located in the forum state. The trusts hold, and have held since their

creation, substantial assets in Louisiana." *Id*. at 708. The court observed that it was *not* the unilateral decisions of the beneficiary that created contacts with the state, but the trustee agreed to be responsible for administering Louisiana property and could have anticipated being haled into Louisiana courts.

The Louisiana court relied on the seminal *Burger King* case in determining that the defendant had sufficient minimum contact with the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). In *Burger King*, the contract at issue established the franchise relationship in Miami and was governed by Florida law. *Burger King Corp.*, 471 U.S. at 467. The contract also required for the payment of all fees and forwarding of all relevant notices to the Miami headquarters. There, the court held that the defendant, a resident of Michigan, "established a substantial and continuing relationship with the [Florida] headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and has failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair." *Id*. at 487.

Similarly, here, the Defendant established a substantial and continuing relationship with Alabama by agreeing to administer Gateside, an Alabama rental property, as the trustee of the KREIT, a trust recorded in Alabama and governed by the laws of Alabama. He continued his strong ties to Alabama through selling Gateside in a seller-financed transaction that requires he collect monthly payments from an Alabama resident. (Docs. 21 at 19; 19-7). While the Defendant protests in a sworn declaration that he conducts no business in Alabama, he has no interest in property in Alabama, the KREIT is administered entirely in Massachusetts, and the money belonging to the KREIT is entirely received in

Massachusetts, those assertions are not availing.  Equally unavailing are his observations that Decedent was not an Alabama resident when the KREIT trust document was executed and that Decedent did not die in Alabama.  The Defendant's residence in Massachusetts when the agreement was executed is also not dispositive.  The Defendant entered into an agreement to serve as trustee over a trust formed in Alabama and governed by Alabama law.  The KREIT agreement was also recorded in Dale County, Alabama.  (Doc. 19-2). The KREIT held Alabama real estate and collected income from Gateside's rental operations from tenants located in Alabama.  The trust now collects monthly installments from an Alabama resident pursuant to that seller-financed agreement.  The deed, note, and mortgage associated with Gateside's sale were also prepared by the Defendant's attorney whose office is in Dale County, Alabama, and those documents were recorded in Dale County, Alabama. (Docs. 19-7, 21).  The KREIT's ties to Alabama are strong and unambiguous such that the Defendant should have reasonably anticipated being haled into court here.  Thus, the Defendant readily meets the minimum contacts test.

Once it has been established that the nonresident purposefully established minimum contacts with the forum, the court must consider whether the assertion of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1516 (citing *Burger King*, 471 U.S at 476).  Here, the Court is satisfied that the defendant has a "substantial and continuing relationship" with the forum, and that the defendant "received fair notice from the contract documents and the course of dealing that he might be subject to suit [in the forum state]." *See Burger King*, 471 at 487.  Since the defendant "has failed to demonstrate how jurisdiction in that forum would otherwise

be fundamentally unfair . . ." it is appropriate for this Court to exercise jurisdiction over the Defendant. *Id.*

## C. Motion to Transfer

In the alternative, the Defendant argues that the Court should transfer venue to either Massachusetts, where the Defendant lives and purports to administer the trust, or else New Hampshire, where the Estate is administered and Decedent lived before his death. For the reasons stated below, transfer is not appropriate under these circumstances.

### a. Legal Standard for a Motion to Transfer

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden is usually on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice because courts normally afford great deference to a plaintiff's choice of forum. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The district court has "broad discretion in weighing the conflicting arguments as to venue." *England v. ITT Thompson Industries Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988); *Holmes v. Freightliner, LLC*, 237 F. Supp. 2d 690 (M.D. Ala. 2002) ("Section 1404(a) analysis recognizes that the plaintiff's selected forum is presumptively correct, and accordingly, the court affords deference to the plaintiff's selection. The defendant, therefore, bears the burden of demonstrating that the suggested forum is more convenient.") Courts must engage in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Rioch Corp.*, 487 U.S. 22, 29 (1988).

Resolution of a § 1404(a) motion requires the court to first consider whether the action could have been brought in the proposed transferee district and then the court must consider if the convenience of the parties and the interest of justice weigh in favor of the transfer. *Caroll v. Tex. Instruments, Inc.*, 910 F. Supp. 2d 1331 (M.D. Ala. 2012) (citing *C.M.B. Foods, Inc. v. Corral of Md. Ga.*, 396 F. Supp. 2d 1283 (M.D. Ala. 2005)); *Folkes v. Haley*, 64 F. Supp. 1152, 1155 (M.D. Ala. 1999)).

### b.  Propriety of the Transferee District

The Court first considers whether the proposed transferee districts, the United States District Court of Massachusetts or the United States District Court of New Hampshire are districts where the action "might have been brought."  Pursuant to 28 U.S.C. § 1391(b)(1) venue is proper in  "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  The only defendant resides in Massachusetts, making venue proper in that state.  Defendant further asserts that he is subject to the general jurisdiction of the District of Massachusetts because he is at home in the state.  Accordingly, he argues that that the action might originally have been brought in Massachusetts.

The Defendant also asserts that New Hampshire would have been an appropriate district, presumably under 28 U.S.C. § 1391(b)(2), which permits plaintiffs to file cases in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The Defendant asserts that Decedent resided in New Hampshire when he established the KREIT and continued to reside there until his death.  The Defendant further explains that

Decedent's estate was established in New Hampshire and that the Plaintiff Revocable Trust is also a New Hampshire entity. Accordingly, at least some of the relevant events occurred in New Hampshire, but the propriety of venue is less clear when most of the relevant events occurred in Alabama or arguably Massachusetts. While it is possible that the case could have been brought in either Massachusetts or New Hampshire, as explained below, the balance of the other factors weighs more heavily in favor of the Plaintiff's chosen forum of Alabama.

### c. The balance of justice and convenience favors litigating this case in Alabama.

The court must next consider whether the balance of justice and convenience favors transfer. In making this decision, courts consider,

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). The burden lies with the party moving for transfer to make a clear showing that the transfer is in the best interest of the litigation. *In re Ricoh Corp.*, 870 F.2d at 573.

In support of his motion to transfer, the Defendant primarily points to the location of documents in his possession in Massachusetts and the inconvenience he will experience. Modern technology, however, largely resolves any potential obstacles due to the location

of documents and greatly assists with transportation issues the Defendant would face in litigating in Alabama. *See Oliver v. Merritt Dredging Co.*, 979 F.2d 827, 834 (11th Cir. 1992) ("modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity"); *see also Board of Trustees, Sheet Metal Workers National Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation [and] the rapid transmission of documents. . . make[s] it easy. . . for cases to be litigated with little extra burden in any of the metropolitan areas."). The Defendant identifies no potential Massachusetts witnesses other than himself, and he makes only vague allegations regarding potential New Hampshire witnesses who could testify about Decedent's state of mind when he drafted his will and the Revocable Trust.

Where defendants fail to specifically explain which witnesses or documents will be unavailable in the forum, courts have found that the defendants did not carry their burden. *See Employers Mut. Cas Co. v. Bartile Roofs Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (to demonstrate inconvenience, the party moving for transfer must show who the witnesses are and where they are located and demonstrate that their testimony is material); *Intelect Corp. v. Cellco Partnership GP*, 160 F. Supp. 3d 157, 173 (D.D.C. 2016) (stating that by failing to address what witnesses or documents they will be unable to obtain if the case is not litigated in the defendant's preferred forum "Defendants have likewise failed to carry their burden to show that either the convenience of the witnesses or the ease of access to sources of proof weigh in favor of transfer"); *Carroll v. Tex. Instruments, Inc.*, 910 F. Supp. 2d 1331, 1337 (M.D. Ala. 2012) (observing the importance of clearly identifying witnesses

and their testimony so the court can analyze whether the convenience of the witnesses weighs in favor of transfer); *Goodwyn, Mills & Cawood, Inc. v. Black Swamp, Inc*., 956 F. Supp. 2d 1323, 1328 (M.D. Ala. 2012) (stating that with only a "terse" description of the witnesses in the proposed transferee forum, the court could not evaluate the importance of those witnesses and "engage in the required substantive and qualitative analysis of the real burden [the defendants] face").

Additionally, many courts consider the convenience of non-party witnesses to be one of the most important factors in determining whether to transfer the case. *See LaPenna v. Cooper Tires & Rubber Co.*, 2011 WL 2669469, at * 5 (M.D. Ala. 2011) ("the *most important factor* in passing on a motion to transfer venue under § 1404(a) is the convenience of the witnesses"); *Insuracorp, Inc. v. Am. Fid. Assur. Co.*, 914 F. Supp. 504, 506 (M.D. Ala. 1996) ("The most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses"); *Bartronics, Inc. v. Power-One, Inc.*, 510 F. Supp. 2d 634, 637–638 (S.D. Ala. 2007) (stating that aside from plaintiff's own choice of forum, the convenience of the witnesses is the most important factor). The convenience of non-party witnesses is given more weight than the convenience of parties or party witnesses. *LaPenna*, 2011 WL 2669469, at * 5; s*ee also ASD Specialty Healthcare, Inc. v. Letzer, D.O., PLC*, 2010 WL 2952573, at *4 (M.D. Ala. 2010) ("The convenience of non-party witnesses receives considerably more weight than the convenience of parties or party-witnesses"). Moreover, while a plaintiff may not "'vex,' 'harass,' or 'oppress' the defendant" by imposing unnecessary trouble and expense, unless "the balance is strongly

in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381 (11th Cir. 2009).

Here, the Plaintiffs frame the central dispute as one over the amount of money the investment made prior to the sale, while Decedent was living, and over whether the sale-price was a fair amount. The Plaintiffs also seek to void the sale of Gateside and recover any other property that should be part of the KREIT. Accordingly, the Plaintiffs point to numerous potential witnesses who may be called upon to testify regarding the value of the rental income from Gateside, the appropriateness of the sale price of Gateside, and the intention of the parties in drafting the KREIT agreement, including Defendant's own Alabama counsel and Gateside's purchaser. The Defendant has demonstrated little more than the fact that litigating in Alabama will inconvenience him. Accordingly, the Defendant has not met his burden to make a clear showing that a transfer is in the best interest of the litigation, and the Defendant's Motion to Change Venue is denied.

## IV. CONCLUSION

For the reasons stated above, it is ORDERED that the Defendant's Motion to Dismiss and Alternatively, Motion to Change Venue (Doc. 19) is DENIED.

DONE this 4th day of December, 2019.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE